UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

ROBERT E. FOX

Case No. 1:15-cr-00025-JMS-MJD-1

ORDER ON MOTION FOR
SENTENCE REDUCTION UNDER
18 U.S.C. § 3582(c)(1)(A)
(COMPASSIONATE RELEASE)

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction

in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided

in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cr-00025-JMS-MJD |
| | ) | |
| ROBERT E. FOX, | ) | -01 |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Robert Fox (01) has filed a motion seeking compassionate release under § 603

of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). [Filing No. 208.]

For the reasons explained below, his motion is **DENIED**.

## I.
### BACKGROUND

On February 17, 2016, Mr. Fox was convicted of two counts of Hobbs Act robbery, in

violation of 18 U.S.C. § 1951(a), and two counts of Using, Carrying, or Possessing a Firearm

During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(C)(i). [Filing

No. 111; Filing No. 113.]  The offense conduct is summarized in the Presentence Investigation

Report as follows:

> Between May and August 2014, a series of armed robberies of businesses and restaurants occurred on the east side of Indianapolis.  Based on the security footage of the robberies, it appeared the same person may have committed them.  An anonymous tip led the Indianapolis Metropolitan Police Department (IMPD) to investigate Robert Fox as a suspect in the robberies.  At the time, the defendant was on parole after serving a term of incarceration for armed robbery, and he was residing on the east side of Indianapolis.
>
> On July 20, 2014, Fox robbed a White Castle restaurant on Shelby Street in Indianapolis.  During the robbery, he pointed a gun at a worker and demanded money.  He stole $130.46. Two victims of the White Castle robbery selected Fox's

2

photo from a photo array and indicated he was the man who had robbed the business.

On August 5, 2014, the defendant robbed a Speedway gas station in Indianapolis. He pointed a gun at the clerk and forced the clerk to lie down on the floor. He took $152, cigarettes, and the clerk's cell phone.

Also linking Fox to the robberies was a traffic citation he received on June 21, 2014. During the stop, the defendant was driving a bronze 2007 Chevrolet Impala. The Bureau of Motor Vehicles showed the vehicle was registered to [a female individual]. On the night of the White Castle robbery, the Safeway grocery store across the street from the restaurant happened to have its video surveillance equipment operating. The store's video showed a man, who appeared to be the robber, running out of the White Castle and entering a vehicle very similar to [the female individual's].

On August 20, 2014, two officers with IMPD followed the Chevrolet Impala on North College Avenue in Indianapolis. A traffic stop was initiated. The vehicle was driven by [the female individual], and Fox was the passenger. The defendant was taken into custody for further investigation into the robberies. At this point, an officer noticed a handgun partially hidden underneath the seat where the defendant had been sitting. Fox told officers, "That's my gun. She don't know nothing about that." It was a Smith and Wesson model SD9VE 9-millimeter handgun with serial number HFK 1204, which had been stolen during an armed robbery of a Pizza Hut restaurant the night before.

After his arrest, Fox was interviewed by IMPD detectives…. He admitted he robbed the White Castle and Speedway. The defendant also reported an attempted robbery of a Waffle House on an unknown date. Fox denied involvement in any additional robberies, including the Pizza Hut. The firearm seized from Fox was not used in any of the robberies he admitted committing.

[Filing No. 160 at 5-6.]

Mr. Fox faced a guideline term of 63 to 78 months' imprisonment on the Hobbs Act counts, 84 months on the first § 924(c) count, and 300 months on the second § 924(c) count. [Filing No. 160 at 18.] Mr. Fox was initially sentenced to 435 months' imprisonment, consisting of concurrent 51-month sentences for each of the robbery counts and consecutive sentences of 84 months and 300 months, respectively, for the two firearm counts. [Filing No. 113.] On appeal, the Seventh Circuit Court of Appeals affirmed Mr. Fox's conviction but vacated his sentences and remanded

for resentencing.  [Filing No. 148.]  In August 2018, Mr. Fox was resentenced to a total term of imprisonment of 396 months and 1 day, consisting of concurrent sentences of 12 months and 1 day on each of the robbery counts and consecutive sentences of 84 months and 300 months, respectively, for the two firearm counts.  [Filing No. 163; Filing No. 164.]  At the time of his resentencing, the consecutive 84-month and 300-month sentences for the two firearm counts represented the mandatory minimum sentence under the so-called "stacking" provisions of § 924(c)(1).  *See* 18 U.S.C. § 924(c)(1) (eff. Oct. 6, 2006 to Dec. 20, 2018).  As explained below, the stacking provisions of § 924(c)(1) have since changed.  The Bureau of Prisons ("BOP") currently reports Mr. Fox's anticipated release date as January 22, 2045. https://www.bop.gov/inmateloc/ (last visited July 17, 2026).

Mr. Fox has filed his third Motion for Compassionate Release, [Filing No. 208], the Government opposes the motion, [Filing No. 212], Mr. Fox did not file a reply, and the motion is now ripe for the Court's consideration.

## II.
### DISCUSSION

The general rule is that sentences imposed in federal criminal cases are final and may not be modified.  18 U.S.C. § 3582(c).  Yet under one exception to this rule, a provision known as compassionate release, a court may reduce a sentence.  18 U.S.C. § 3582(c)(1)(A)(i).

The United States Sentencing Commission has been authorized by Congress to develop policies to be used by the courts in considering compassionate release motions.  The Sentencing Commission has set forth the following considerations: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement"; and second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(a)(1)(A) and

4

(a)(2).  If a court finds that extraordinary and compelling reasons exist and that the defendant is not a danger to the safety of any other person or to the community, it goes on to consider the sentencing factors in 18 U.S.C. § 3553(a), "to the extent that they are applicable."  U.S.S.G. § 1B1.13(a).

The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute.  *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020).  The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction," *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).  On this point, the United States Sentencing Commission recently amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13 (Nov. 2023).

Mr. Fox argues in support of his motion that due to changes in the law, he would receive a significantly shorter sentence if he were sentenced today and that he has engaged in rehabilitation while incarcerated.  [Filing No. 208.]  The Court will address each argument in turn.

### A.      Extraordinary and Compelling Reasons

#### 1.      *Changes in the Law*

Mr. Fox argues that "[d]ue to changes under the First Step Act, [he] would [receive] a significantly shorter sentence if sentenced today."  [Filing No. 208 at 1.]

In its response, the Government argues that based on Mr. Fox's previous motions for compassionate release, it understands him to be arguing that he would receive a shorter sentence today due to changes to § 924(c)'s anti-stacking provision.  [Filing No. 212 at 10.]  It traces changes

to the United States Sentencing Guidelines and asserts that the changes to § 924(c) cannot constitute an extraordinary and compelling reason for release under United States Sentencing Guideline § 1B1.13(b)(6) because the changes are nonretroactive.  [Filing No. 212 at 7-11.]

At the outset, the Court notes that Mr. Fox does not explain in his motion what changes to the law he is relying upon.  He does not provide any specific argument regarding his statement that changes in the First Step Act would lead to a shorter sentence if he were sentenced today.  Due to this lack of specificity, his argument is waived.  *M.G. Skinner Ins. Agency, Inc. v. Normal-Spencer Agency, Inc.*, 845 F.3d 312, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

In any event, assuming his argument is based on changes to § 924(c), it is without merit.  U.S.S.G. § 1B1.13(b)(6) provides:

> **(6) Unusually Long Sentence.** – If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

The Seventh Circuit Court of Appeals has held that a change-in-the-law argument regarding § 924(c), "whether alone or in combination with other factors," cannot be considered an extraordinary and compelling reason for compassionate release.  *United States v. Thacker*, 4 F.4th 569, 574-76 (7th Cir. 2021) (holding that the change to § 924(c) cannot constitute an extraordinary and compelling reason and explaining that "there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute") (citation omitted).  And most significantly, the United States Supreme Court considered this exact issue just two months ago in *Rutherford v. United States*, 608

U.S. ----, 146 S. Ct. 1320 (2026), and held that "[w]hen Congress declines to make a sentencing amendment retroactive, the fact that a preamendment sentence is longer than it would have been postamendment is not an 'extraordinary and compelling reason[n]' that 'warrant[s]' a sentence reduction." *Id.* at 1330 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). It explained:

> The disparity created by Congress's amendment to § 924(c) does not satisfy [the] definition [of "extraordinary and compelling"]. Far from "extraordinary," nonretroactive amendments to criminal penalties are the norm. Ordinarily, we have explained, statutory changes to federal penalties only benefit *future* offenders. Congress sometimes deviates from the default, as it did in the Act, by extending the revised penalties to defendants not yet sentenced. Even then, some measure of prospectivity is par for the course: The ordinary practice is to withhol[d] that change from defendants already sentenced. And regardless of whether the line is drawn at the offense or the sentence, a nonretroactive penalty change necessarily creates a disparity between those who receive the benefit and those who do not…. Such a disparity is an unexceptional feature of a system in which nonretroactivity is the default.

> As for "compelling": It is hard to see how Congress's deliberate decision *not* to extend newly reduced penalties to those already sentenced could be a convincing reason that warrants a reduction. As we have explained, Congress decided to apply the lower prison sentences to some violators of § 924(c) – those for whom a sentence had not yet been imposed – but not others. In doing so, Congress reinforced its interest in finality and avoided burdening district courts with additional litigation. Treating the disparity resulting from § 924(c)'s amendment as a compelling reason for reducing a sentence would undermine Congress's choice to leave the sentence intact.

*Rutherford*, 146 S. Ct. at 1330-31 (quotations and citations omitted, emphasis in original).

In short, the nonretroactive changes to § 924(c) – even if they would lead to a lesser sentence for Mr. Fox if he were sentenced today – do not constitute an extraordinary and compelling reason for release, whether considered alone or in combination with any other factor.

### 2. Rehabilitation

Mr. Fox also argues in support of his motion that during his incarceration, he "has demonstrated rehabilitation through programming, mentorship, and discipline." [Filing No. 208 at 1.]

The Government argues that "while [Mr.] Fox has taken strides towards rehabilitation while in prison, that fact in and of itself is not an extraordinary and compelling reason to reduce his sentence." [Filing No. 212 at 11.]

BOP records indicate that Mr. Fox has engaged in programming while incarcerated, [*see* Filing No. 212-4], but such efforts are expected and rehabilitation "is not, by itself, an extraordinary and compelling reason" for release in any event. U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t). Rehabilitation "may be considered in combination with other circumstances," *id.*, but the Court has already found that the other circumstance to which Mr. Fox points does not constitute an extraordinary and compelling reason for compassionate release. Further, as discussed in more detail below, the Court finds that Mr. Fox would be a danger to any other person or the community if he were to be released before an additional period of incarceration. Mr. Fox's efforts at rehabilitation, while commendable, are not a reason for compassionate release, whether considered alone or in combination with any other reason.

In sum, Mr. Fox has not presented extraordinary and compelling reasons for release, but the Court goes on to consider whether he is a danger to the safety of any other person or to the community.

### B.    Danger to the Safety of Any Other Person or to the Community

Mr. Fox argues that he "has matured and no longer presents the same risk," and that he would live with his grandmother upon release, has family support, will seek employment, and will "comply with all conditions." [Filing No. 208 at 2; *see also* Filing No. 208-2 at 1.].] He submits a letter of support from his grandmother and a statement regarding her willingness to have Mr. Fox live with her upon his release. [Filing No. 208-2 at 2-3.]

8

In its response, the Government discusses the seriousness of Mr. Fox's offenses and notes that while incarcerated, Mr. Fox has "amassed over thirty conduct incidents for offenses including disorderly conduct, fleeing or physically resisting staff, and refusing to obey an order." [Filing No. 212 at 12.] It asserts that Mr. Fox was on parole from the Indiana Department of Correction for less than a year when he committed the offense underlying this case. [Filing No. 212 at 12-13.] The Government also notes that Mr. Fox has only served about 30% of his sentence. [Filing No. 212 at 13.][1]

Mr. Fox committed two armed robberies in which he pointed a gun at employees, and during one of those robberies he forced an employee to lie down on the floor and took the employee's cell phone. Significantly, Mr. Fox was on parole for a state court case involving armed robbery when he committed the offenses underlying this case. And although Mr. Fox argues that he has matured while incarcerated, the Court also finds it significant that he has been involved in numerous disciplinary incidents including smoking in an unauthorized area, being insolent to staff members, threatening bodily harm, refusing a work assignment, possessing drugs/alcohol, and allowing another inmate to use a phone. [Filing No. 212-2 at 1-3.] The Court cannot discount the real danger to the community that Mr. Fox would pose if he were to be released before an additional period of incarceration. The Court finds that Mr. Fox is a serious danger to the safety of any other person or to the community, making compassionate release inappropriate. 18 U.S.C. § 3142(g); U.S.S.G. § 1B1.13(a)(2).

---

[1] The Government sets forth these arguments in connection with the § 3553(a) analysis, but they apply with equal force to the question of whether Mr. Fox is a danger to the safety of any other person or to the community.

**C.      Section 3553(a) Factors**

Mr. Fox argues that the § 3553(a) factors weigh in favor of compassionate release, noting that he has matured during his incarceration and no longer presents a risk to the public. [Filing No. 208 at 2.] He points to his plan to live with his grandmother and seek employment. [Filing No. 208 at 2.]

The Government argues that the § 3553(a) factors weigh heavily against compassionate release. [Filing No. 212 at 12-13.] It notes that Mr. Fox brandished a firearm in both robberies, which could have easily resulted in serious bodily injury or death to an employee of the businesses that he robbed. [Filing No. 212 at 12.] The Government also notes that Mr. Fox was sentenced to 25 years' imprisonment on state charges involving two armed robberies and that he has been involved in over thirty conduct incidents while incarcerated for the offenses underlying this case. [Filing No. 212 at 12.]

The Court has already found that compassionate release is not warranted because Mr. Fox has not presented extraordinary and compelling reasons for his release and because he would be a danger to any other person or the community if he were to be released before an additional period of incarceration. Although it need not consider the factors set forth in § 3553(a), it also finds for the reasons already discussed that releasing Mr. Fox at this point would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, or protect the public from further crimes. Consideration of the § 3553(a) factors provides an independent basis for denying Mr. Fox's Motion for Compassionate Release.

In sum, the Court finds that Mr. Fox has not presented extraordinary and compelling reasons to release him, he would be a danger to the safety of any other person or the community if

he were to be released before an additional period of incarceration, and the § 3553(a) factors weigh against compassionate release. Accordingly, his Motion for Compassionate Release, [Filing No. 208], is **DENIED**.

### III.
#### CONCLUSION

For the reasons stated above, Mr. Fox's Motion for Compassionate Release, [208], is **DENIED**.

Date: 7/20/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Robert E. Fox
#12612-028
FCI McKean
Federal Correctional Institution
P.O. Box 8000
Bradford, PA 16701